IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Civil No. 1:19CV1215 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| $5,600.00 in U.S. CURRENCY, | : | |
| Defendant. | : | |

**<u>VERIFIED COMPLAINT OF FORFEITURE</u>**

NOW COMES the plaintiff, United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and respectfully states as follows:

1. This is a civil action *in rem* brought to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of the defendant property, which was furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.* ("CSA"), or represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate any violation of the CSA.

2. This action is also brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of the aforesaid defendant property which constitutes or is derived from proceeds traceable to an offense constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense, specifically the exchange of a controlled substance in violation of state and federal law.

3. The defendant property is $5,600.00 in U.S. Currency, which was seized on June 18, 2019, in Greensboro, North Carolina, and is currently in the custody of the United States Postal Inspection Service Holding Account.

4. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1) and 1395, because the defendant property was seized while located in the jurisdiction of this Court, or one or more of the acts giving rise to forfeiture occurred in this district.

6. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7. The facts and circumstances supporting the seizure and forfeiture of the defendant property are contained in **Exhibit A**, attached hereto and wholly incorporated herein by reference.

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

This the 13th day of December, 2019.

Respectfully submitted,

MATTHEW G.T. MARTIN
United States Attorney

/s/ Steven N. Baker
Steven N. Baker
Assistant United States Attorney
N.C. Bar No. 36607
101 S. Edgeworth Street, 4th Floor
Greensboro, NC 27401
Phone: (336) 333-5351
Email: steve.baker3@usdoj.gov

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America, that the contents of the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

*Angela D. Pollard*
Angela D. Pollard
Postal Inspector
United States Postal Inspection Service

## DECLARATION

I, Angela D. Pollard, hereby state, pursuant to 28 U.S.C. § 1746, under penalty of perjury and pursuant to the laws of the United States, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a United States Postal Inspector and have been so employed since 1999. I completed a fourteen-week basic training course at the United States Postal Inspection Service (USPIS) Training Academy in Potomac, Maryland. I have received specialized training in Interview and Interrogations, Mail Theft Investigations, Prohibited Mailings-Narcotics, Property and Evidence Handling Procedures, Workplace Violence Prevention, Field Legal Training, and Confidential Informant Training. Prior to starting the USPIS Training Academy, I was a Law Enforcement Officer in the City of Fayetteville, North Carolina, from 1989 to 1999. While employed for the City of Fayetteville, I received specialized training in various fields, including Narcotics Investigations. I am currently assigned to the Prohibited Mailing Narcotics Team in Greensboro, North Carolina, Charlotte Division, which is responsible for investigations of violations involving the United States Mail, including use of the U.S. Mails to transmit controlled substances, in violation of 21 U.S.C. §§ 841, 843(b).

2. This declaration is submitted in support of a Verified Complaint of Forfeiture of $5,600.00 in U.S. currency seized by USPIS on June 18, 2019, from a United States Postal Service Priority Mail Express envelope addressed to an address in Antioch, CA 94531. The envelope was from an address in Claremont, NC 28610.



GOVERNMENT EXHIBIT A

3. On June 18, 2019, Postal Inspectors were conducting routine parcel inspections at the Greensboro Processing & Distribution Center (P&DC), 1120 Pleasant Ridge Rd., Greensboro, North Carolina. Postal Inspectors selected a USPS Priority Express Mail parcel envelope, bearing USPS Tracking Number EE426643555US (the "Suspect Parcel"), for further investigation. The Suspect Parcel was addressed to "Ash Pope 5120 Monitor Pass Way Antioch, CA 94531" with a return address of "Burke 3356 Fork Creek Ln Claremont, NC 28610." The Suspect Parcel weighed 10 ounces and had a metered postage of $25.50 from meter R2305K141174-02. The Suspect Parcel was shipped from the Claremont, North Carolina, Post Office on June 18, 2019.

4. Postal Inspectors determined that the Suspect Parcel was suspicious because the affixed mailing label was handwritten and did not contain a business account number, indicating the sender likely paid cash. Inspectors know from experience that most individuals and businesses normally use preprinted typed mailing labels that contain the correct addressee and sender name. Narcotics or other contraband traffickers will often hand write the labels, use fictitious addresses, waive signature, mail from a different location, and/or purposely omit part of the address in an attempt to thwart law enforcement.

5. A search on the return address was conducted in a law enforcement database. Those records indicated that 3356 Fork Creek Lane, Claremont, North Carolina, is a valid mailing address, and is associated with Dominique BURKE.

6. A search was conducted on the delivery address in a law enforcement database. Records indicated that 5120 Monitor Pass Way, Antioch, California, 94531, is a valid mailing address, and is associated with Ashley Pope.

7. On June 18, 2019, Postal Inspectors attempted to speak telephonically with BURKE. BURKE did not answer, and Postal Inspectors left a message. Shortly thereafter, Postal Inspectors received a call back from an individual who identified himself as BURKE. BURKE gave consent for Postal Inspectors to open the parcel. The Priority Mail Express envelope contained two white envelopes. Each white envelope contained a stack of U.S. Currency wrapped in paper. The U.S. Currency was counted and the total was $5,600.00.

8. On June 18, 2019, Postal Inspectors requested assistance from the Greensboro Police Department (GPD), Canine Handler Detective Justin Blanks and his canine partner, "Kash," a certified narcotics detection canine. A parcel lineup was arranged at the Greensboro P&DC in an area not used to store or maintain any controlled substances. The parcel lineup consisted of the Suspect Parcel and four additional parcels of various shapes and sizes. Upon examination, "Kash" alerted to the Suspect Parcel.

9. There were no notes, ledgers, or instructions for disposition or ownership of the currency in the Suspect Parcel. I know from my training and experience that narcotics traffickers rarely include instructions with drug proceeds. On the other hand, legitimate businesses or personal gifts typically contain notes, letters, receipts, cards, or coupons along with the cash or monetary instruments.

10. The U.S. currency was seized and taken to a local United States Postal Service location where it was counted by a Sales and Service Associate. The Sales and Service Associate count confirmed the total amount of U.S. currency to be $5,600.00. The currency found in the Suspect Parcel consisted of (6) $10 bills; (197) $20 bills; and (16)

3

$100 bills. I know from my training and experience that narcotics traffickers often use low denomination currency to conduct their business; in most cases, they use $20 bills. This is yet another way that the currency found in the Suspect Parcel is consistent with narcotics trafficking.

11. On June 18, 2019, USPIS initiated administrative forfeiture of the seized currency. On September 16, 2019, USPIS received a claim and petition from Dominique BURKE. As a result, on June 18, 2019, the administrative forfeiture process was terminated and the seizure was referred to the United States Attorney's Office.

12. The U.S. currency has been deposited into the USPIS Holding Account.

13. A review of BURKE's criminal history revealed that he was arrested on July 12, 2012, with a charge of Possessing Marijuana. He was found guilty in Catawba County Superior Court on September 14, 2012, for Possessing Marijuana. BURKE was also arrested in 2011 and 2015 for marijuana possession.

14. Detective Blanks has been a sworn law enforcement officer for the past eighteen years with the Greensboro Police Department (GPD), having completed Basic Law Enforcement Training (BLET) in May, 2001. Detective Blanks is currently assigned as an Investigative Interdiction Detective in the Vice & Narcotics Division of the GPD and has worked narcotics investigations, specifically, since January 2006. In January 2014, Detective Blanks was selected to be a Narcotics Detection Dog Handler and assigned K-9 Kash, a German Shepard, a breed specifically selected for their keen senses and ability to be trained to detect the odor of controlled substances.

15. In addition to BLET, Detective Blanks has attended Police Law Institute, Street Crimes, Basic Narcotics Investigators course, Airport Narcotics Investigations, Introduction to Conspiracy Investigations, Highway/Rural Drug Investigations, Advanced Criminal Interdiction Investigation, Basic K-9/Detector Dog Training, High Risk Apprehensions, Bus Interdiction, Parcel Interdiction, Train Interdiction, and has attended numerous other training seminars. Detective Blanks has been certified through the U.S. Drug Enforcement Administration's Operation JETWAY Training program to conduct all manner of Interdiction Investigations and has completed well over 500 hours of training with the majority of the training focusing on illegal narcotics throughout his career.

16. In addition to his current assignment, Detective Blanks has served the department as a Patrol Officer, Police Training Officer (PTO), and as a street-level, drug officer. Detective Blanks is a member of the North Carolina Narcotics Enforcement Officers Association (NCNEOA), the International Narcotics Interdiction Association (INIA), and the International Police Working Dog Association (IPWDA). In 2003, Detective Blanks was recognized as the Greensboro Police Officers Association as Officer of the Year, and has received Officer of the Month on numerous occasions. In 2011, Detective Blanks' Investigative Interdiction Team was selected as the INIA International Interdiction Group of the Year.

17. Detective Blanks has conducted and assisted in narcotics investigations leading to the arrest and conviction of numerous narcotics traffickers in the State of North Carolina, 18th Prosecutorial District, and the United States District Court, Middle District of North Carolina.

18. In December 2017, Kash was purchased from Ventosa Kennels in Scotland Neck, North Carolina, by the GPD. After undergoing several tests as to his suitability as a police work dog, Kash was accepted by the Canine Division and began training in December 2017. Kash and Detective Blanks have completed together 200 hours of basic canine detection training with Corporal Dwayne Diaz, a canine handler and trainer who has multiple years of experience in the Canine Division of the GPD.

19. Kash has demonstrated that he can reliably use his olfactory senses to locate the odor of controlled substances, which include heroin, cocaine, crack cocaine, marijuana, hashish, methamphetamine, and ecstasy. After successful completion of this training, Kash entered into service with the GPD Vice & Narcotics Division as a narcotics detection K-9 in December 2017.

20. In training with the GPD, Kash was "imprinted" to detect the odor of cocaine, crack cocaine, marijuana, hash, methamphetamine, heroin, and ecstasy. At the beginning of training, the officers placed all seven substances in a hidden box, and Kash was rewarded with a toy when he correctly alerted. Officers then removed one substance at a time and repeated the testing, until Kash could detect the presence of any of the substances individually.

21. On February 5, 2018, Detective Blanks took Kash to Fayetteville, North Carolina, to undergo testing by the International Police Working Dog Association. Kash underwent three tests. The first was an open air field test where narcotic substances were hidden in four locations in a field or a parking lot. Kash successfully found the four hidden locations of controlled substances. The second test was of interior rooms. Kash had to

6

search five rooms, and alert to the presence of controlled substances. One of the rooms did not have any controlled substances; Kash did not alert to the blank room. The third test involved vehicles. Kash had to search eight school buses. Two of the buses had no drugs and were blank. Kash successfully alerted to the six buses that had controlled substances, and successfully did not alert on the two buses that were blank. Based on his one hundred percent successful rate of testing, Kash received certification from the International Police Working Dog Association. This certification is valid for 15 months from the date of issuance. Kash was recertified in May 2019.

22. K-9 Kash is trained to "passively alert" after detecting the odor of narcotics for which he has been trained. A "passive alert" consists of a physical reaction which ultimately ends in his coming to a sitting position and/or alternating looks between Detective Blanks and the point of narcotics for which he is trained to detect. K-9 Kash also exhibits various mental and physical reactions that are noticeable to Detective Blanks, which include changes in his behavior, such as becoming possessive of the area, a refusal to leave an area where the odor of narcotics is detected and changes to his breathing rate and sniffing patterns.

23. Detective Blanks has successfully demonstrated the ability to properly deploy and maintain a police narcotics K-9 and effectively locate controlled substances with the assistance of K-9 Kash, which have been concealed in locations including, but not limited to, sealed packages, residential homes and outbuildings, automobiles, tractor trailers, luggage, electrical components/appliances, in the ground, and elsewhere, since

being placed into service. Detective Blanks and K-9 Kash have assisted various local, state and federal law enforcement officers in numerous narcotics investigations.

24. Postal Inspectors are aware that individuals who regularly handle controlled substances often leave the scent of controlled substances on the box and other packaging material that they handle. Packaging materials are also often stored in close proximity to controlled substances, transferring the odor of the controlled substance to the packaging material. Individuals who send proceeds of controlled substances often prepare the packages at the same location where controlled substances are received, stored, and processed, thus transferring the odor to the "money packages."

## CONCLUSION

25. Based upon the foregoing, your Declarant maintains there is probable cause to believe the $5,600.00 in United States currency seized was furnished or intended to be furnished in exchange for a controlled substance, or represents proceeds traceable to the exchange of a controlled substance, or was used or intended to be used to facilitate a violation of the Controlled Substances Act, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

This the _12th_ day of December, 2019.

*Angela D. Pollard*
Angela D. Pollard
Postal Inspector

8

Case 1:19-cv-01215   Document 1-1   Filed 12/13/19   Page 8 of 8